# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5357 | **DATE** | 4/16/2003 |
| **CASE TITLE** | Bond vs. Dr. Aguinaldo, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting in part and denying in part defendants' motion to dismiss complaint. Plaintiff's official capacity claims against Dr. Doughty and Dr. Gonzalez are therefore dismissed. The court will appoint counsel to represent plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 6 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | APR 17 2003 date docketed | |
| | Notified counsel by telephone. | | | 42 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/16/2003 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

JACKEY L. BOND, )
)
       Plaintiff, )
)
v. ) No. 02 C 5357
)
DR. AGUINALDO, et al., )
)
       Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jackey Bond, a state inmate at Stateville Correctional Center in Joliet, acting *pro se*, sued various physicians and prison officials under 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs in violation of his Eighth and Fourteenth Amendment rights. Defendants Stephen Doughty and Roselina Gonzalez, both doctors, now move to dismiss for failure to state a claim on which relief can be granted, or at least to dismiss the official capacity claims against them. I grant the motion in part, dismissing only the official capacity claims.

### I. Background

On a motion to dismiss, I take all allegations in the complaint as true. *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 401 (7th Cir. 1996). The relevant facts as alleged by Mr. Bond are as follows. When Mr. Bond was first transferred to Stateville in 1999, he complained of back and throat pain that went

42

untreated by other defendants not party to this motion. In October of 2000, he saw an ear, nose and throat (E.N.T.) specialist who found two cysts on his vocal chords and indicated that he was regurgitating acid from his stomach that was eating away at the lining in his throat. The E.N.T. specialist prescribed Tagament for Mr. Bond and suggested that he see a gastroenterologist if his acid reflux problem did not improve. Mr. Bond also saw a "voice specialist" who likewise recommended seeing a gastroenterologist, because until the acid reflux problem was solved, there was nothing he could do for Mr. Bond's throat.

In February 2001, Mr. Bond was transferred to Pinckneyville Correctional Center. At Pinckneyville, Mr. Bond saw Dr. Doughty and Dr. Gonzalez. Mr. Bond alleges that Dr. Doughty and Dr. Gonzalez failed to respond to Mr. Bond's requests for treatment and ignored the recommendations of the E.N.T. and voice specialists at Stateville that Mr. Bond see a gastroenterologist. Mr. Bond alleges that his throat condition worsened, and that he can hardly swallow or talk. In February 2002, Mr. Bond was returned to Stateville.

## II. Failure to State a Claim

Dr. Doughty and Dr. Gonzalez argue that Mr. Bond's complaint fails to state a claim upon which relief can be granted. A claim may be dismissed "only if 'it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief.'" *Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir. 2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). *Pro se* complaints are liberally construed. *Id.*

Prison officials violate the Eighth Amendment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). This standard encompasses two elements: whether the prisoner's medical need was sufficiently serious, and whether the official acted with a sufficiently culpable state of mind, i.e., deliberate indifference. *Id.* Dr. Doughty and Dr. Gonzalez do not argue that Mr. Bond fails to allege sufficiently serious medical need.[1] Instead, they argue that Mr. Bond's complaint does not adequately allege deliberate indifference. Deliberate indifference is a subjective standard, requiring that an official "know[] of and disregard[] an excessive risk to inmate health." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).[2] Construed liberally, Mr.

---

[1] Such an argument would likely be fruitless at this stage anyway. The Seventh Circuit has cautioned that "given the liberal standards governing federal notice pleading (particularly in conjunction with the leniency with which *pro se* complaints must be evaluated), the 'seriousness' determination will often be ill-suited for resolution at the pleading stage ...." *Gutierrez,* 111 F.3d at 1372 n.7.

[2] While *Farmer* was a case alleging deliberate indifference in failing to protect plaintiff from assault by other inmates, it has been held to apply to medical treatment cases as well. *See, e.g.,*

3

Bond's complaint alleges that both Dr. Doughty and Dr. Gonzalez were aware of Mr. Bond's medical condition and failed to adequately treat it. Under the liberal federal notice pleading rules, this is a sufficient allegation of deliberate indifference to support Mr. Bond's § 1983 claim. *See Scott v. City of Chicago,* 195 F.3d 950, 952 (7th Cir. 1999) ("[A] pleading need contain only enough to allow the defendant[s] to understand the gravamen of the plaintiff's complaint.").

Dr. Doughty and Dr. Gonzalez argue that various attachments to Mr. Bond's complaint undermine his claims and show that he did in fact receive treatment at Pinckneyville. First, they point to a letter from Christine Mitchell, a nurse at Pinckneyville, to Mr. Bond indicating that she has reviewed his file and that he has "been provided medical treatment and numerous evaluations by several different physicians." Further, she notes that he has been purchasing food deemed inappropriate for someone with acid reflux, and that he was given Maalox for his stomach. She also notes that the doctor evaluated his back, and concludes that "I feel your issues have been addressed here as well as [at] other institutions and proper medical [care] has been given." Second, Dr. Doughty and Dr. Gonzalez point to a letter from Kay Ann Fairless of the Administrative Review Board Office of Inmate Issues, to Mr. Bond indicating that on the day he was transferred to Pinckneyville, he

---

*Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir. 1996).

4

was evaluated by health care staff and he had no complaints. Finally, Dr. Doughty and Dr. Gonzalez point to a letter from Julius Flagg, Assistant Warden of Programs at Pinckneyville, to Jamesetta Bond, Mr. Bond's wife, indicating that health care staff "has addressed more than once inmate Bond's issues," that the specialist he saw in October 2000 "only recommended a diet for reflux," and that he was given a physical exam and would be given a complete exam once his lab work is complete. Mr. Flagg concluded by stating "I feel that inmate Bond is receiving adequate medical services here at Pinckneyville Correctional Center."

It is true that "a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d 449, 455 (7th Cir. 1998) (hereinafter *NIGOS*). Further, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Id.* at 454. The Seventh Circuit has cautioned, however, against reading the rule too broadly. *Id.* at 455. In *NIGOS*, the court distinguished between attached documents that themselves form the basis of the claim, such as contracts or loan agreements, and documents attached for reasons unrelated to their truth. Thus, for example, a written contract attached to a complaint will defeat invocation of the Statute of Frauds, and a document disclosing what the complaint

alleges it concealed will defeat the allegation of concealment. *Id.* While the Seventh Circuit found that the rule that a plaintiff adopts as true every word of an attached document in those circumstances makes sense, the court was "not inclined to apply such a rule in the case of letters written by the opposition for what could be self-serving purposes." *Id.* In *NIGOS*, the city of South Bend refused to allow gun shows in a city facility. Th plaintiff alleged that the policy was an impermissible content-based restriction on speech, but attached letters to its complaint written by city officials indicating that the no firearm and ammunition policy had been adopted for safety reasons. The court held that the statements in the attached letters did not preempt plaintiff's allegation of improper speech restrictions. *Id.* at 457. Likewise, here, unilateral statements from corrections officials that Mr. Bond received appropriate treatment do not preempt the allegations in his complaint that Dr. Doughty and Dr. Gonzalez were aware of his medical conditions and failed to treat them adequately. Mr. Bond's complaint therefore sufficiently states a claim against Dr. Doughty and Dr. Gonzalez for deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments.

### III. Official Capacity Claims

Mr. Bond's complaint states that he is suing Dr. Doughty and Dr. Gonzalez in their "personal and official capacities." Dr.

6

Doughty and Dr. Gonzalez move to dismiss the official capacity claims against them. State officials are not amenable to suit for damages under § 1983 in their official capacity. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 n.24 (1997). State officials in their official capacity are, however, amenable to suit for injunctive relief. *Power v. Summers,* 226 F.3d 815, 819 (7th Cir. 2000) ("[O]fficial-capacity suits against state officials that seek only injunctive relief are permitted by 42 U.S.C. § 1983, and not forbidden by the Eleventh Amendment.") (internal citations omitted).[3]

Mr. Bond seeks injunctive relief ordering that he be "schedule[d] to see medical personnel with qualified expertise for his serious medical problems and conditions." Dr. Doughty and Dr. Gonzalez argue that injunctive relief is inappropriate because Mr. Bond has alleged only past harm, unaccompanied by a continuing adverse affect. *See O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974). While Mr. Bond clearly alleges an ongoing violation of his Eighth Amendment rights, (Compl. ¶ 3), Dr. Doughty and Dr. Gonzalez base their argument on the fact that there is no ongoing violation

---

[3] Mr. Bond also argues that he may pursue an official capacity suit against Dr. Doughty and Dr. Gonzalez if he alleges injury resulting from an official policy, custom or practice pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978). Discussion of *Monell* is inapposite, however, as *Monell* applies only to local government officials. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70 (1989) (distinguishing *Monell* from rule prohibiting official capacity suits for damages against state officials under § 1983).

with respect to them; Mr. Bond has been transferred back to Stateville, and there is no allegation either that they will practice medicine at Stateville, or that Mr. Bond will return to Pinckneyville.

Dr. Doughty and Dr. Gonzalez are correct. The allowance of official capacity suits against state officials for injunctive relief is an exception to the general rule of Eleventh Amendment immunity, carved out in *Ex parte Young,* 209 U.S. 123 (1908). This exception "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law." *Milliken v. Bradley,* 433 U.S. 267, 289 (1977). Thus, were Mr. Bond currently housed at Pinckneyville, I could enjoin Dr. Doughty and Dr. Gonzalez to provide him with treatment in conformity with federal law. As Mr. Bond is currently housed at Stateville, however, Dr. Doughty and Dr. Gonzalez are not proper defendants for official capacity suits seeking an injunction ordering treatment.

IV. Conclusion

Defendants' motion to dismiss is GRANTED IN PART. Plaintiff's official capacity claims against Dr. Doughty and Dr. Gonzalez are dismissed.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: April _16_, 2003